Filed 11/20/24; Certified for Publication 12/19/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| ANNALYCIA JENKINS,<br><br>　Plaintiff and Respondent,<br><br>v.<br><br>DERMATOLOGY<br>MANAGEMENT, LLC,<br><br>　Defendant and Appellant. | 2d Civ. No. B333759<br>(Super. Ct. No. 22CV-0564)<br>(San Luis Obispo County) |

　　　Appellant Dermatology Management, LLC, employed respondent Annalycia Jenkins. After respondent had resigned from her position, she brought a class action against appellant. Appellant appeals from the trial court's order denying its motion to compel respondent to arbitrate her claims pursuant to an arbitration agreement that she signed on her first day of work. (Code Civ. Proc., § 1294, subd. (a).)

　　　We conclude the arbitration agreement is procedurally and substantively unconscionable. We reject appellant's contention that the trial court abused its discretion in refusing to sever the

substantively unconscionable provisions and enforce the remainder of the arbitration agreement.  Accordingly, we affirm.  Our affirmance renders moot appellant's contention that the trial court erroneously denied its motion to dismiss respondent's class claims "because nothing in the [arbitration] agreement would permit [her] to bring proposed class claims in arbitration."

*Factual and Procedural Background*

Appellant "owns and operates medical dermatology offices for patients to receive medical services, examinations, surgery, and treatments.  Licensed health care providers treat patients for skin cancer, acne, and other skin conditions.  [Appellant] has multiple offices across California as well as in Nevada and Arizona."

In May 2019 respondent began employment as "a medical assistant" for appellant.  On her first day of work, respondent signed a three-page arbitration agreement ("the Agreement").  Appellant had pre-signed the Agreement four months earlier in January 2019.

In June 2020 respondent resigned from her position with appellant.  In October 2022 she filed a class action against appellant for unfair competition.  (Bus. & Prof. Code, § 17200, et seq.)

Appellant filed a motion to compel respondent to arbitrate her individual claims and to dismiss her class claims.  Following a hearing, the court ruled that the Agreement is unenforceable because it is substantively and procedurally unconscionable.  The court determined that the Agreement is substantively unconscionable because (1) there is a lack of mutuality since the Agreement requires respondent to arbitrate all of her claims, but exempts from mandatory arbitration certain claims of her

2

employer;[1] (2) the Agreement "shortens the applicable statute of limitations of claims against [appellant] to one year"; (3) it imposes unreasonable restrictions on the parties' discovery rights; and (4) it requires the parties to equally share the arbitrator's fees and costs.

The court ruled that the Agreement is procedurally unconscionable because it is "an adhesive contract" that "was prepared and signed by [appellant] months before [respondent] was hired." Moreover, "[i]t is unlikely that any potential employee would understand the implications of [the substantively unconscionable] clauses – namely, that it would be very difficult to prevail in a case against the employer. Further, there is a 'minimum degree of procedural unconscionability that is always present with an adhesive contract.' [Citation.]" The court "decline[d] to sever the unconscionable terms because they are pervasive."

### Enforceability of Arbitration Agreements

"Federal and California law treat valid arbitration agreements like any other contract and favor their enforcement." (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 492 (*Ramirez*).) "'A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party.' [Citations.] Unconscionability has both a procedural and a substantive element. [Citation.] The party

---

[1] The Agreement provides, "This Agreement does not cover those Claims by [appellant] for injunctive and/or other equitable relief for unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information, as to which [respondent] understand[s] and agree[s] that [appellant] may seek and obtain relief from a court of competent jurisdiction."

3

resisting enforcement of an arbitration agreement has the burden to establish unconscionability." (*Ibid*.)

"Procedural unconscionability 'addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power.' [Citation.] This element is generally established by showing the agreement is a contract of adhesion, i.e., a 'standardized contract which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' [Citation.] Adhesion contracts are subject to scrutiny because they are 'not the result of freedom or equality of bargaining.' [Citation.] However, they remain valid and enforceable unless the resisting party can also show that one or more of the contract's terms is substantively unconscionable or otherwise invalid." (*Ramirez, supra*, 16 Cal.5th at pp. 492-493.)

"Substantive unconscionability looks beyond the circumstances of contract formation and considers 'the fairness of an agreement's actual terms' [citation], focusing on whether the contract will create unfair or one-sided results [citation]. Substantively unconscionable contractual clauses 'reallocate risks in an objectively unreasonable or unexpected manner.' [Citations.]" (*Ramirez, supra*, 16 Cal.5th at p. 493.)

"Both procedural and substantive elements must be present to conclude a term is unconscionable, but these required elements need not be present to the same degree. [Citation.] Courts apply a sliding scale analysis under which 'the more substantively oppressive [a] term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' [Citation.] '[W]hether a contract is fair or works unconscionable hardship is determined

4

with reference to the time when the contract was made and cannot be resolved by hindsight by considering circumstances of which the contracting parties were unaware.'" (*Ramirez, supra,* 16 Cal.5th at p. 493.)

*Standard of Review*

"Appellate review of an order regarding an arbitration agreement's validity is de novo if the evidence is not in conflict and the ruling is based entirely on an interpretation of law. [Citation.] If a validity ruling rests on the trial court's resolution of evidentiary disputes, substantial evidence review applies to the court's factual findings." (*Ramirez, supra,* 16 Cal.5th at p. 493.) The parties agree that the trial court's rulings on procedural and substantive unconscionability are subject to de novo review because they are based on undisputed facts.

*The Agreement is Procedurally Unconscionable*

"A court should consider substantive unconscionability only after procedural unconscionability has been established. A 'conclusion that a contract contains no element of procedural unconscionability is tantamount to saying that, no matter how one-sided the contract terms, a court will not disturb the contract because of its confidence that the contract was negotiated or chosen freely, that the party subject to a seemingly one-sided term is presumed to have obtained some advantage from conceding the term or that, if one party negotiated poorly, it is not the court's place to rectify these kinds of errors or asymmetries. " (*Ramirez, supra,* 16 Cal.5th at p. 494.)

Appellant contends respondent failed to carry her burden of establishing that the Agreement is procedurally unconscionable because she "has not submitted any evidence – including a declaration of her own – as to the circumstances under which she

5

signed the arbitration agreement." Appellant made the same contention below. The trial court responded: "[Appellant] correctly points out that [respondent] did not file a declaration describing unconscionable conditions regarding her signing of the [A]greement. [Appellant] concludes this means there is no evidence of procedural unconscionability. Had [respondent] filed a declaration this would be an easy call. But even without a declaration I feel there is enough evidence to show the minimal amount of procedural unconscionability necessary to deny the motion to compel [arbitration]."

We agree with the trial court that, despite the lack of a declaration from respondent, the evidence establishes procedural unconscionability. Johnna Rogers-Castro, appellant's "vice president of human resources," declared: "The standard business practice [when respondent was hired] was for the office's practice manager [Estephanie Abarca Calderon] to review all onboarding documents, including . . . benefit forms, handbook acknowledgment forms, and the mutual arbitration agreement, with the newly hired employee on the employee's first day. The practice manager presented the documents and was available to answer any questions." Four months before appellant's first day of work, the Agreement had been signed by appellant's "Chief People Officer," Siobhain McCarthy. How could respondent be expected to negotiate with the office's practice manager a contract that had been pre-signed by appellant's Chief People Officer? A reasonable person in respondent's position would have concluded that the Agreement was a take-it-or-leave-it condition of employment that could not be modified or refused. "No evidence indicates [respondent] had any opportunity to negotiate

6

or refuse to sign the arbitration agreement." (*Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 114 (*Martinez*).)

In any event, "a complaining party need not show it tried to negotiate standardized contract terms to establish procedural unconscionability." (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 127 (*OTO L.L.C.*); see also *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 244 ["To establish procedural unconscionability, Carbajal was not required to show she attempted to negotiate the terms of the Agreement because the imbalance of bargaining power is apparent from the relationship between the parties.  CW Painting was an employer and Carbajal . . . was not a highly sought-after employee"].)

The Agreement was a contract of adhesion.  "An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.'" (*OTO, supra*, 8 Cal.5th at p. 126.)  Appellant clearly had superior bargaining power.  Respondent was not a doctor or a registered nurse.  Rogers-Castro declared: "As part of her job duties, [respondent] assisted in administrative and clinical duties, including obtaining patient vital signs,[2] medical history, transcribing patient visits into the medical charts, stocking the room with medical supplies, answering patient questions, and processing biopsies.  On occasion, [respondent] had to assist with obtaining authorization for patients' prescription medications or surgeries, which required working

---

[2]"The four main vital signs" are body temperature, pulse rate, respiration rate (rate of breathing), and blood pressure <https://www.hopkinsmedicine.org/health/conditions-and-diseases/vital-signs-body-temperature-pulse-rate-respiration-rate-blood-pressure> [as of Sept. 3, 2024], archived at <https://perma.cc/BW5C-JFZL>.

7

with [appellant's] billing specialists based in Nevada and with national health insurance entities."

"[I]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th at p. 115 (*Armendariz*).)

We conclude the Agreement is procedurally unconscionable based on (1) the inequality of bargaining power between the parties, (2) the signing of the Agreement by the Chief People Officer four months before the Agreement was presented to respondent, and (3) the absence of the Chief People Officer when the Agreement was presented to respondent. Rogers-Castro declared, "The practice manager presented the documents and was available to answer any questions."

*The Agreement Contains Multiple*
*Substantively Unconscionable Provisions*

Lack of Mutuality

The trial court ruled that the Agreement contains multiple substantively unconscionable provisions. "'"[T]he paramount consideration in assessing [substantive] conscionability is mutuality."'" (*Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 85.) The Agreement is lacking in mutuality because it requires respondent to arbitrate all of her claims against appellant, but exempts from mandatory arbitration certain claims by appellant, including claims "for

8

injunctive and/or other equitable relief for unfair competition." (See fn. 1 at p. 3, *ante*.)

Respondent sought injunctive and other equitable relief for violations of the Unfair Competition Law (UCL). (Bus. & Prof. Code, § 17200, et seq.; see *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1144 ["A UCL action is equitable in nature; damages cannot be recovered"].) The Agreement requires respondent's UCL action to be arbitrated, but it does not require appellant to arbitrate an action against respondent for injunctive or other equitable relief for unfair competition. In *Martinez, supra,* 118 Cal.App.4th at p. 115, the court concluded that a similar provision "is substantively unconscionable" for lack of mutuality.

<u>Shortening of Statute of Limitations</u>

The Agreement imposes a one-year statute of limitations that starts to run on "the date the aggrieved party first has knowledge of the event giving rise to the Claim." Respondent's sole claim is a UCL claim, and "[*a*]*ny* action on *any* UCL cause of action is subject to the four-year period of limitations created by [Business and Professions Code section 17208]."[3] (*Cortez v.*

---

[3] Business and Professions Code section 17208 provides that a UCL action "shall be commenced within four years after the cause of action accrued." "Traditionally at common law, a 'cause of action accrues "when [it] is complete with all of its elements"—those elements being wrongdoing, harm, and causation.' [Citations.]" (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191.)

9

*Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 179.) The Agreement provides that any claim made after the expiration of the one-year statute of limitations "shall be void and deemed waived even if there is a federal or state statute of limitations which would have given more time to pursue the Claim."

"It is settled that parties may agree, in an arbitration agreement or otherwise, to shorten the limitations period applicable to a claim. [Citations.] However, the shortened limitations period must be reasonable." (*Ramirez*, *supra*, 16 Cal. 5th at p. 501.) The Court of Appeal held that an arbitration agreement's one-year statute of limitations was "unconscionable because many of [the employee's] claims have longer statute of limitations." (*De Leon v. Pinnacle Property Management Services, LLC* (2021) 72 Cal.App.5th 476, 487, disapproved on other grounds in *Ramirez*, *supra*, 16 Cal.5th at pp. 505-506.) In *De Leon* the employee's claims included a UCL claim. (*Ibid*; see also *Pinela v. Neiman Marcus Group, Inc.* (2015) 238 Cal.App.4th 227, 254 ["'Where, as in this case, arbitration provisions undermine statutory protections, courts have readily found unconscionability'"].)

Accordingly, "[t]he shortened [one-year] limitations period provided by [appellant's] arbitration agreement is unconscionable and insufficient to protect its employees' right to vindicate their statutory rights." (*Martinez*, *supra*, 118 Cal.App.4th at pp. 117-118.)

<u>Sharing Arbitrator's Fees and Costs</u>

Another substantively unconscionable provision is the requirement that the parties "equally share [without limitation] the fees and costs of the Arbitrator." "[W]hen an employer imposes mandatory arbitration as a condition of employment, the

arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." (*Armendariz*, *supra*, 24 Cal.4th at pp. 110-111.) Thus, an employer can compel arbitration of a claim only if the arbitration agreement "'"does not require employees to pay . . . any arbitrators' fees or expenses as a condition of access to the arbitration forum."'" (*Ramirez*, *supra*, 16 Cal.5th at p. 504.)

"[T]he risk that a claimant may bear substantial costs of arbitration . . . may discourage an employee from exercising the constitutional right of due process." (*Martinez*, *supra*, 118 Cal.App.4th at p. 116.) "The mere inclusion of the costs provision in the arbitration agreement produces an unacceptable chilling effect . . . ." (*Id*. at p. 117.)

Appellant contends the provision is not substantively unconscionable because "[t]he arbitration agreement is governed by AAA [American Arbitration Association] rules, requiring [appellant] to pay arbitration costs." (Capitalization and bold omitted.) But the Agreement prevails over AAA rules. The Agreement provides, "[Appellant] and [respondent] agree that, *except as provided in this Agreement*, any arbitration shall be in accordance with the then-current [rules] of the American Arbitration Association . . . ." (Italics added.)

<u>Limitation of Discovery</u>

"[A]n arbitration agreement required as a condition of employment must generally permit employees sufficient discovery to adequately arbitrate any statutory claims. The scope of what discovery is sufficient is determined by the arbitrator." (*Ramirez*, *supra*, 16 Cal. 5th at p. 505.) "Parties can agree to

11

limitations on discovery, but an arbitration agreement must ""ensure minimum standards of fairness' so employees can vindicate their public rights.""" (*Murrey v. Superior Court* (2023) 87 Cal.App.5th 1223, 1248 (*Murrey*).)

The Agreement contains the following discovery provision: "Each party shall have the right to take the deposition of one individual and any expert witness designated by another party. Upon mutual consent or upon a showing of substantial need, each party also shall have the right to propound requests for production of documents to any party." The trial court ruled that this provision is substantively unconscionable because it unreasonably limits respondent's discovery rights.

Appellant argues that the provision does not limit discovery rights. It "merely serves as the floor of permissible discovery." "Had [appellant] intended for the discovery provision to serve as a 'ceiling' [for discovery], the [A]greement would have presented limiting language such as, 'each party shall have the right to take the deposition of *only* one individual,' or 'each party shall have the right to take a *maximum of one deposition* of an individual.'" Appellant maintains that, since the discovery provision establishes a floor rather than a ceiling for discovery, the provision "must be read in conjunction with the AAA Rules, which govern the [A]greement."

The AAA employment dispute discovery rule provides: "The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." (AAA, Employment Arbitration Rules and Mediation Procedure (revised Jan. 1, 2023), Rule 9 (hereafter

Rule 9).) "[T]he AAA rules contain measures that ensure adequate discovery." (*Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 720 (*Fitz*).)

To determine the extent of permissible discovery, we must interpret the Agreement's discovery provision. "An arbitration clause is governed by the same principles of interpretation as other agreements. '"The fundamental rule is that interpretation of . . . any contract . . . is governed by the mutual intent of the parties at the time they form the contract. [Citation.] The parties' intent is found, if possible, solely in the contract's written provisions. . . ."'" (*Gloster v. Sonic Automotive, Inc.* (2014) 226 Cal.App.4th 438, 447.)

"[W]hen interpreting a contract, we strive to interpret the parties' agreement to give effect to all of a contract's terms, and to avoid interpretations that render any portion superfluous, void or inexplicable." (*Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1507.) If, as appellant insists, AAA rules govern and the Agreement's discovery provision merely establishes a "floor" for discovery, then the discovery provision is superfluous. Assuming that, pursuant to AAA rules, the arbitrator has the power to order whatever discovery the arbitrator "considers necessary to a full and fair exploration of the issues in dispute" (Rule 9), there is no need for the Agreement to state that "[e]ach party shall have the right to take the deposition of one individual and any expert witness designated by another party." We cannot imagine that, in an employment dispute, an arbitrator would completely bar a party from taking any depositions or from deposing the other party's expert witness. "Normally, we assume the arbitrator will act reasonably and in conformity with the law." (*Ramirez, supra,* 16 Cal.5th at p. 506.) "Given the complexity of employment

13

disputes, the outcomes of which are often determined by the testimony of multiple percipient witnesses, as well as written information about the disputed employment practice, it will be the unusual instance where the deposition of two witnesses will be sufficient to present a case." (*Fitz*, *supra*, 118 Cal.App.4th at p. 717.)

In addition, there is no need for the Agreement to state that, "upon a showing of substantial need, each party also shall have the right to propound requests for production of documents to any party." Applying the AAA discovery rules, no arbitrator would deny a party the right to "propound requests for production of documents" if the party made "a showing of substantial need" for the documents.

Thus, appellant's construction of the Agreement's discovery provision "violates fundamental principles of contract interpretation by rendering [this provision] superfluous." (*Kern County Hospital Authority v. Public Employment Relations Bd.* (2024) 100 Cal.App.5th 860, 887.) The discovery provision would be unnecessary if AAA discovery rules apply and the provision merely establishes a floor for discovery. "[Appellant] deliberately replaced the AAA's discovery provision with a more restrictive one, and in so doing failed to ensure that employees are entitled to discovery sufficient to adequately arbitrate their claims. [Appellant] should not be relieved of the effect of an unlawful provision it inserted in the [Agreement] due to the serendipity that the AAA rules provide otherwise." (*Fitz*, *supra*, 118 Cal.App.4th at p. 721.) Accordingly, the discovery provision is substantively unconscionable.

14

*Trial Court Did Not Abuse Discretion in Refusing*
*to Sever Substantively Unconscionable Provisions*

"If a contractual clause is found unconscionable, the court may, in its discretion, choose to do one of the following: (1) refuse to enforce the contract; (2) sever any unconscionable clause; or (3) limit the application of any clause to avoid unconscionable results. [Citation.] . . . The trial court's decision . . . is reviewed for abuse of discretion." (*Ramirez, supra*, 16 Cal.5th at p. 513.)

"At the outset, a court should ask whether 'the central purpose of the contract is tainted with illegality.' [Citation.] If so, the contract cannot be cured, and the court should refuse to enforce it. If that is not the case, the court should go on to ask first, whether the contract's unconscionability *can* be cured purely through severance or restriction of its terms, or whether reformation by augmentation is necessary. [Citation.] If no 'reformation is required,' the offending provision can be severed or limited, and 'the rest of the arbitration agreement left intact,' then severance or restriction is the preferred course for provisions that are collateral to the agreement's main purpose. [Citations.] If the unconscionability cannot be cured by extirpating or limiting the offending provisions, but instead requires augmentation to cure the unconscionability, then the court should refuse to enforce the contract. [Citation.] Courts cannot 'rewrite agreements and impose terms to which neither party has agreed.'" (*Ramirez, supra*, 16 Cal.5th at p. 516.)

Here, the four substantively unconscionable provisions can be cured by severing them from the Agreement. The lack of mutuality can be cured by deleting paragraph 2 entitled "**Claims Not Covered by this Agreement.**" The statute of limitations problem can be cured by (1) deleting "**and Statute of**

15

**Limitations**" from the heading of paragraph 3 entitled, "**Required Notice of All Claims and Statute of Limitations**," and (2) deleting the first sentence of paragraph 3 which establishes the one-year statute of limitations.  The limitation on discovery can cured by deleting paragraph 4 entitled "**Discovery**."  Finally, the arbitrator's fees and costs problem can be cured by deleting the first sentence of paragraph 7, which provides, "The Company and I shall equally share the fees and costs of the Arbitrator."

"Even if a contract *can* be cured, the court should also ask whether the unconscionability *should* be cured through severance or restriction because the interests of justice would be furthered by such actions.  [Citation.]  This part of the inquiry focuses on whether mere severance of the unconscionable terms would function to condone an illegal scheme and whether the defects in the agreement indicate that the stronger party engaged in a systematic effort to impose arbitration on the weaker party not simply as an alternative to litigation, but to secure a forum that works to the stronger party's advantage. [Citation.]  If the answer to either question is yes, the court should refuse to enforce the agreement." (*Ramirez*, *supra*, 16 Cal.5th at pp. 516-517.)

"In conducting this analysis, the court may also consider the deterrent effect of each option[, i.e., severance of the substantively unconscionable provisions or refusal to enforce the arbitration agreement]. . . . [S]evering multiple unconscionable provisions from an agreement and enforcing the remainder could 'create an incentive for an employer to draft a one-sided arbitration agreement in the hope employees would not challenge the unlawful provisions, but if they do, the court would simply modify the agreement to include the bilateral terms the employer

16

should have included in the first place.' [Citation.] Although there are no bright-line numerical rules regarding severance, it is fair to say that the greater the number of unconscionable provisions a contract contains the less likely it is that severance will be the appropriate remedy." (*Ramirez*, *supra*, 16 Cal.5th at p. 517.) "'[M]ultiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage.'" (*Id*. at p. 515.)

A trial court "abuses its discretion when it misinterprets or misapplies the law." (*In re M.W.* (2018) 26 Cal.App.5th 921, 931.) In its reply brief, appellant maintains that the trial court abused its discretion because its ruling "strongly suggests that the number of substantively unconscionable terms was the sole reason it declined to exercise severance." This, appellant asserts, was "a mistake of law." "[T]he presence of multiple unconscionable clauses is merely *one factor* in the trial court's inquiry; it is *not* dispositive." (*Lange v. Monster Energy Company* (2020) 46 Cal.App.5th 436, 454.)

The trial court's written ruling shows that it did not conclude the Agreement was unenforceable merely because of the number of substantively unconscionable provisions. It carefully evaluated each provision as well as the procedurally unconscionable factors. It stated, "The Arbitration Agreement is procedurally unconscionable, and in conjunction with the pervasive substantive unconscionability, is unenforceable."

"[A] court [also] abuses its discretion where no reasonable basis for the action is shown." (*Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa* (2015) 238 Cal.App.4th 513, 519; see *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566

17

["'Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered . . .'"].) "Under the abuse of discretion standard, we presume the trial court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise." (*Canyon Crest Conservancy v. County of Los Angeles* (2020) 46 Cal.App.5th 398, 409.) This court has "previously commented on the 'daunting task' confronting an appellant who seeks reversal of a trial court's discretionary ruling." (*Dreamweaver Andalusians, LLC v. Prudential Ins. Co. of America* (2015) 234 Cal.App.4th 1168, 1171, citing *Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1448-1449.)

Appellant has failed to show that the trial court exceeded the bounds of reason in refusing to enforce the Agreement instead of severing the unconscionable provisions. "[T]he trial court [here] could have reasonably concluded that '[the four substantively unconscionable] defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage.'" (*Alberto v. Cambrian Homecare* (2023) 91 Cal.App.5th 482, 496.) "When we consider the [Agreement's] procedural [unconscionability] and substantively unconscionable provisions together, they indicate a concerted effort to impose on an employee a forum with distinct advantages for the employer." (*Murrey, supra,* 87 Cal.App.5th at p. 1256.)

In addition, the trial court could have reasonably concluded that "[t]o enforce the agreement would incentivize employers to impose multiple unlawful arbitration provisions on employees, who would likely forego bringing suit for fear they would be forced to bear [half] the costs and burdens of the one-

18

sided arbitration agreement. If an employee had the resources to bring suit in court and challenge enforcement of the arbitration agreement, the employer could still compel arbitration if the trial court was willing to sever the offending provisions." (*Mills v. Facility Solutions Group, Inc.* (2022) 84 Cal.App.5th 1035, 1067–1068.)

"The overarching inquiry is whether "'the interests of justice . . . would be furthered'" by severance." (*Armendariz, supra*, 24 Cal.4th at p. 124.) The trial court acted within its discretion in impliedly determining that the interests of justice would not be furthered by severing the substantively unconscionable provisions. Despite the Agreement's statement that respondent "entered into this agreement voluntarily," the Agreement is not "a voluntary means of resolving disputes." (*Id.* at p. 115 ["Arbitration is favored in this state as a voluntary means of resolving disputes, and this voluntariness has been its bedrock justification"].)

### Disposition

The order denying appellant's motion to compel arbitration is affirmed. Respondent shall recover her costs on appeal.



YEGAN, J.

We concur:


GILBERT, P. J.


BALTODANO, J.

19

Tana L. Coates, Judge

Superior Court County of San Luis Obispo

_____


      Epstein Becker & Green and Kevin D. Sullivan, Benjamin T. Runge, for Defendant and Appellant.

      Lawyers for Justice and Edwin Aiwazian, Elizabeth Parker-Fawley, Arman Marukyan, for Plaintiff and Respondent.

Filed 12/19/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| ANNALYCIA JENKINS,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DERMATOLOGY<br>MANAGEMENT, LLC,<br><br>    Defendant and Appellant. | 2d Civ. No. B333759<br>(Super. Ct. No. 22CV-0564)<br>(San Luis Obispo County)<br><br><br>ORDER CERTIFYING<br>OPINION FOR PUBLICATION<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

      The opinion in the above-entitled matter filed on November 20, 2024, was not certified for publication in the Official Reports.  For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.


GILBERT, P. J.          YEGAN, J.          BALTODANO, J.